UNITED STATES DISTRICT COURT

Northern District of California

Oakland Division

| | |
|---|---|
| KORVEL M. SUTTON,<br><br>　　　　　　Plaintiff,<br>　　v.<br>APPLE COMPUTERS ITUNES, et al.<br>　　　　　　Defendants.<br>_____/ | No. C 11-03911 LB<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO SET ASIDE ENTRY OF DEFAULT AND DENYING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT**<br><br>[Re: ECF Nos. 23, 33] |

## I. INTRODUCTION

In this case, Defendant Apple Inc. (erroneously sued as "Apple Computers iTunes") failed to timely answer or respond to plaintiff Korvel Sutton's complaint for copyright infringement. Apple's default was entered. Upon service of Mr. Sutton's motion for default judgment, Apple finally answered his complaint. Its failure to timely answer or respond to his complaint apparently was the result of human error, and Apple moved to set its default aside. Pursuant to Civil Local Rule 7-1(b), the court finds that these matters are suitable for determination without oral argument and the January 19, 2012 hearing is VACATED. For the reasons set forth below, the court GRANTS Apple's motion to set aside its default and, conversely, DENIES Mr. Sutton's motion for default judgment.

## II. BACKGROUND

On August 8, 2009, *pro se* plaintiff Korvel Sutton sued Apple Computers iTunes ("Apple") and individuals Donald McMillan and James Callon (collectively, "Defendants") for copyright

C 11-03911 LB

infringement. Complaint, ECF No. 1.[1] Mr. Sutton, a former member of the early 1990s West Coast rap group, Pretty Boy Gangsters, alleges that Defendants infringed his copyrighted songs that appear on Pretty Boy Gangsters' 1991 album, *Rollin' Like A Star*. Complaint, ECF No. 1 at 3-4, Ex. 2-C.[2] Mr. Sutton alleges that the album's songs have been made available for download on Apple's iTunes service without his consent or permission, in violation of Title 17 of the United States Code. *Id*. at 3-4, Ex. 2-A.[3]

The court granted Mr. Sutton's application to proceed *in forma pauperis* and ordered the U.S. Marshal to serve Defendants with the complaint and summonses. IFP Order, ECF No. 6. All three Defendants were successfully served by the U.S. Marshal. Acknowledgment of Service (Apple), ECF No. 8; Acknowledgment of Service (Callon), ECF No. 10; Acknowledgment of Service (McMillan), ECF No. 19. Service was accepted on behalf of Apple by a "Ros, Q," apparently a member of its legal department, at 2:00 p.m. on August 23, 2011. Acknowledgment of Service (Apple), ECF No. 8.

Under Federal Rule of Civil Procedure 12(a)(1), Apple had until September 13, 2011 to answer Mr. Sutton's complaint, but it did not.[4] So, Mr. Sutton requested that the Clerk of the Court enter

---

[1] Citations are to the Electronic Case File ("ECF") with pin cites to the electronic page number at the top of the document, not the pages at the bottom.

[2] The following songs appear on *Rollin' Like A Star*: (1) "Pretty Boy Gangsters"; (2) "Hard as Fuck"; (3) "Activist"; (4) "Monies on My Mind"; (5) "Mack on Top of the Stack"; (6) "P.B.G.'s Get Funky (Rollin' like a Star)"; (7) "K the Buster"; (8) "On the Tip of a Mack"; (9) "Indo Smoke"; and (10) "It Ain't Right." Complaint, ECF No. 1, Exs. 1-A & 1-B.

[3] 17 U.S.C. § 501(a) states that "[a]nyone who violated any of the exclusive rights of the copyright owner as provided by sections 106 through 122 . . . is an infringer of the copyright." "In order to state a claim for copyright infringement, plaintiff must show (1) that it owns a valid copyright in the allegedly infringed material, and (2) that defendants violated an exclusive right granted to the copyright owner. The exclusive rights of the copyright owner are enumerated in Section 106 and include 'to reproduce the copyrighted work in copies or phonorecords' and 'to distribute copies or phonorecords of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending.'" *IO Group, Inc. v. Pralat*, No. C 10–03647 WHA, 2011 WL 4713748, at *2 (N.D. Cal. Oct. 7, 2011) (quoting 17 U.S.C. § 106(1), (3)).

[4] Mr. Callon timely answered the complaint. Answer (Callon), ECF No. 9. To date, Mr. McMillan has not filed an answer or otherwise responded to the complaint.

Apple's default, which it did on October 18, 2011. Motion for Entry of Default, ECF No. 21; Entry of Default (Apple), ECF No. 25.

Mr. Sutton then moved for default judgment against Apple. Motion for Default Judgment, ECF No. 23. Given Apple's default, Mr. Sutton also asked the court to approve a subpoena *duces tecum* to be served on Apple which would assist in the calculation of damages. In approving Mr. Sutton's subpoena, the court ordered the U.S. Marshal once again serve Apple with documents related to this case, including the Clerk of the Court's entry of its default and Mr. Sutton's motion for default judgment. 11/10/2011 Order, ECF No. 31.

Shortly thereafter, Apple answered Mr. Sutton's complaint. Original Answer (Apple), ECF No. 39. At the same time, Apple filed a motion to set aside its default. Motion to Set Aside Default, ECF No. 33. Both motions are discussed below.

## III. LEGAL STANDARD

Under Federal Rule of Civil Procedure 55(c), a court may set aside an entry of default for "good cause." *See United States v. Signed Personal Check No. 730 of Yubran S. Mesle*, 615 F.3d 1085, 1091 (9th Cir. 2010). To determine whether a defendant has shown good cause to justify vacating entry of default, a court considers three factors: (1) whether the defendant engaged in culpable conduct that led to the default; (2) whether the defendant had a meritorious defense; and (3) whether reopening the default would prejudice plaintiff. *See id.* (citing *Franchise Holding II, LLC v. Huntington Rests. Group., Inc.*, 375 F.3d 922, 925 (9th Cir. 2004)). This standard is disjunctive, meaning, the court may deny the request to vacate default if any of the three factors is true. *See id.* (citing *Franchise Holding II*, 375 F.3d at 925). "Crucially, however, '[j]udgment by default is a drastic step appropriate only in extreme circumstances; a case should, whenever possible, be decided on the merits.'" *Id.* (quoting *Falk v. Allen*, 739 F.2d 461, 463 (9th Cir. 1984)).

The standard to set aside an entry of default is the same standard used to determine whether a default judgment should be set aside under Federal Rule of Civil Procedure 60(b), except that in the Rule 55(c) context, courts have greater discretion and can apply the standard more liberally to grant relief from entry of judgment because there is no interest in the finality of the judgment. *See id.* at 1091 n.1 (citations omitted); *TCI Group Life Ins. Plan v. Knoebber*, 244 F.3d 691, 696 (9th Cir.

2001); *Hawaii Carpenters' Trust Fund v. Stone*, 794 F.2d 508, 513 (9th Cir. 1986); *Mendoza v. Wight Vineyard Mgmt*, 783 F.2d 941, 945 (9th Cir. 1986). When considering whether to vacate a default under Rule 55(c), the court's "underlying concern . . . is to determine whether there is some possibility that the outcome of the suit after a full trial will be contrary to the result achieved by the default." *Hawaii Carpenters' Trust Fund*, 794 F.2d at 513.

As the party seeking to set aside entry of default, a defendant bears the burden of showing good cause under this test. *Id*. To ensure that cases are decided on the merits whenever possible, the court resolves any doubt regarding whether to grant relief in favor of vacating default. *O'Connor v. Nevada*, 27 F.3d 357, 364 (9th Cir. 1994).

## IV. DISCUSSION

In the next sections, the court addresses the legal standards for the three factors at issue here: (A) Apple's culpability; (B) any meritorious defense; and (C) prejudice to Mr. Sutton.

### A. Apple's Culpability

"'A defendant's conduct is culpable if he has received actual or constructive notice of the filing of an action and *intentionally* failed to answer.'" *Mesle,* at 615 F.3d at 1092 (quoting *TCI Group*, 244 F.3d at 697). "Intentionally" means that a movant is not culpable merely for making a conscious choice not to answer. *Id.* (quoting *TCI Group*, 244 F.3d at 697). Instead, to treat a failure to answer as culpable, the movant must act with bad faith, such as with "'an intention to take advantage of the opposing party, interfere with judicial decisionmaking, or otherwise manipulate the legal process.'" *Id.* (*quoting TCI Group*, 244 F.3d at 697). For that reason, the Ninth Circuit has "'typically held that a defendant's conduct was culpable for purposes of the [good cause] factors where there is no explanation of the default inconsistent with a devious, deliberate, willful, or bad faith failure to respond.'" *Id.* (quoting *TCI Group*, 244 F.3d at 698). By contrast, a defendant's mere negligent failure to file an answer is insufficient to establish culpability under this factor. *TCI Group*, 244 F.3d at 697.

Here, Apple's failure to answer or respond to Mr. Sutton's complaint was the result of neglect, not bad faith. According to declarations submitted from several of its employees, Mr. Sutton's complaint was erroneously tagged as a subpoena rather than a complaint, and this error led to the

complaint not be timely reviewed by the appropriate persons.  Motion to Set Aside Default, ECF No. 33 at 6-8.[5]

---

[5] As Apple explained in its motion:

> On August 23, 2011, Roslyn Quinn, a legal specialist in Apple's legal department responsible for the intake and logging of legal correspondence, received and signed for Mr. Sutton's complaint. (Declaration of Roslyn Quinn ("Quinn Decl.") ¶ 5.)  Pursuant to Apple's procedures, Ms. Quinn was to categorize the document by type and, for subpoenas and search warrants, route the document to the responsible lawyers and/or paralegals in Apple's legal department [(Declaration of Jeff C. Risher ("Risher Decl.")] ¶ 6; Quinn Decl. ¶¶ 3, 6-7); for service of process of a complaint, Ms. Quinn was to deliver the complaint to another Apple employee, Claudia Newsome, for intake and logging according to a separate procedure.  (Risher Decl. ¶ 5; Quinn Decl. ¶ 4.)  Ms. Quinn mistakenly identified Mr. Sutton's complaint as a subpoena in a copyright case and treated it accordingly.  (Quinn Decl. ¶ 6.)  She did not forward the complaint to Ms. Newsome but, instead, logged it as a "subpoena for business records."  (*Id*.)  She then emailed the document to the responsible individuals in the legal department with a subject line indicating that the attached document—i.e., the complaint—was a subpoena.  (E.g., Quinn Decl. ¶ 7, Ex. 1; Risher Decl. ¶ 8, Ex. 1.)  Ms. Quinn sent that email to Jeff Risher, an attorney, and Charstie Wheelock and Stanley Flemister, both legal specialists.  (*Id*.)  Mr. Risher was the person primarily responsible for taking steps to respond to the "subpoena."  (Risher Decl. ¶ 8.)  Unfortunately, he did not open the attachment to the email and did not realize that the document labeled "subpoena" was in fact a complaint.  (*Id*.)
>
> Nor did Ms. Wheelock or Mr. Flemister discover the error.  (Declaration of Charstie Wheelock ("Wheelock Decl.") ¶ 4); Declaration of Stanley Flemister ("Flemister Decl.") at ¶ 4.).)  Because this email did not indicate that the subpoena was from a governmental entity, because both Ms. Wheelock and Mr. Flemister were merely copied on the email, and because the email was sent to an attorney, Mr. Risher, their standard practice would have been to await further instructions from Mr. Risher.  (*Id*.)  To the best of their recollections, neither Ms. Wheelock nor Mr. Flemister opened the attachment or realized that it was a complaint.  (*Id*.)
>
> Apple would have caught the errors but for an additional consequence of the original miscategorization.  Because there is significant variation in the time within which subpoenas require a response, and because Apple attorneys may not be able to immediately review subpoenas attached to notification emails, Apple's procedures require that in the absence of a response from an attorney or legal specialist regarding a subpoena, Ms. Quinn would communicate further with the responsible attorney in advance of the subpoena's return date.  (Risher Decl. ¶ 8.)  In this instance, however, Ms. Quinn did not log a return date for the "subpoena" (because it was in fact a complaint and did not bear a "return date") and, consequently, did not undertake her

C 11-03911 LB

5

1   Mr. Sutton suggests in his opposition brief that Apple's explanation is implausible, given the
2   procedures its has in place to prevent such an oversight, and that Apple's employees have not acting
3   honestly. Opposition, ECF No. 40 at 2. While Apple does indeed have procedures to identify legal
4   documents that are served upon (as detailed in Apple's motion), the court has no reason to disbelieve
5   Apple's employees' declarations. Sometimes mistakes happen, and Apple's mistakes do not
6   evidence "'a devious, deliberate, willful, or bad faith failure to respond.'" *Mesle,* at 615 F.3d at 1092
7   (quoting *TCI Group*, 244 F.3d at 698).

8   Given that bad motive cannot be inferred from Apple's explanation for its failure to timely
9   answer or respond to Mr. Sutton's complaint, and given the Ninth Circuit's forgiving standard for
10  evaluating "culpable conduct," the court finds that Apple is not culpable for its default.

11  **B.  Meritorious Defense**

12  Under the second factor, a defendant seeking to vacate entry of default must allege specific facts
13  that, if true, that would constitute a defense. *See Mesle*, 615 F.3d at 1094 (citing *TCI Group*, 244
14  F.3d at 700). The burden on the defendant is "not extraordinarily heavy." *Id*. (citing *TCI Group*,
15  244 F.3d at 700). That being said, a mere general denial without facts to support it is insufficient to
16  justify vacating an entry of default. *Franchise Holdings II* , 375 F.3d at 926.

17  Apple has put forth specific facts supporting two potentially meritorious defenses. It first
18  contends that a third-party rights holder granted Apple a valid license to promote, sell, and distribute
19  the allegedly infringed works. Motion to Set Aside Default, ECF No. 33 at 12 (citing Declaration of
20  Jeremy Smith, ECF No. 38, ¶ 7). *See Worldwide Church of God v. Philadelphia Church of God,*
21  *Inc.*, 227 F.3d 1110, 1114 (9th Cir. 2000) ("The existence of a license creates an affirmative defense

---

23  normal practice of following up with Mr. Risher regarding the "subpoena." (Quinn
    Decl. ¶ 7; Risher Decl. ¶¶ 8-9.)
24

25      Apple's procedures typically function effectively to enable it to respond in a
    timely fashion to the large volume of legal documents that Apple receives on a daily
26  basis. (Risher Decl. ¶¶ 3, 10.) In this case, Apple's procedures did not function as
    intended, which unfortunately resulted in a failure to timely respond to Mr. Sutton's
27  complaint. (*Id*. ¶¶ 10-11.)
28

Motion to Set Aside Default, ECF No. 33 at 7-8.

1  to a claim of copyright infringement.") (citing *I.A.E., Inc. v. Shaver*, 74 F.3d 768, 775 (7th

2  Cir.1996)). Second, it contends that Mr. Sutton's claim for damages resulting from "worldwide

3  sales" fails because the United States' copyright laws have no application to extraterritorial

4  infringement. *Id*. (citing *Subafilms, Ltd. v. MGM-Pathe Commc'ns Co.*, 24 F.3d 1088, 1095-96 (9th

5  Cir. 1994).

6  Mr. Sutton makes no effort to refute Apple's contentions, and given that Apple's burden with

7  respect to this factor is "not extraordinarily heavy," *Mesle*, 615 F.3d at 1094 (citing *TCI Group*, 244

8  F.3d at 700), the court finds that Apple has set forth meritorious defenses to support its motion to set

9  aside its default.

10 **C.  Prejudice to Plaintiff**

11 The final factor examines whether setting aside the default prejudices the plaintiff. Prejudice is

12 more than "simply delaying the resolution of a case. Instead, the standard is whether [the plaintiff's]

13 ability to pursue his claim will be hindered." *TCI Group*, 244 F.3d at 701 (internal quotations

14 omitted). "[T]he delay must result in tangible harm such as a loss of evidence, increased difficulties

15 of discovery, or greater opportunity for fraud or collusion." *Id*. By contrast, merely requiring a

16 plaintiff to litigate the merits of a case is not prejudice under this third prong. *Id*. As the Ninth

17 Circuit explains, "A default judgment gives the plaintiff something of a windfall by sparing her from

18 litigating the merits of her claim because of her opponent's failure to respond; vacating the default

19 judgment merely restores the parties to an even footing in the litigation." *Id*.

20 Here, Mr. Sutton has not shown that he has been prejudiced by Apple's failure to timely answer

21 or respond to his complaint. At worst, Apple's oversight has resulted delayed the prosecution of Mr.

22 Sutton's case by a few months. As noted above, such delay does not prejudice Mr. Sutton, as it does

23 not hindered his ability to pursue his copyright infringement claim.

24 **V.  CONCLUSION**

25 Based on the foregoing, the court GRANTS Apple's motion to set aside its default. And because

26 Apple is no longer in default, Mr. Sutton's motion for default judgment is DENIED. *See*, *e.g.*, *Solar*

27 *Liberty Energy Sys., Inc. v. Suacci*, 2011 U.S. Dist. LEXIS 130583, at *5-6, 15 (S.D. Cal. Nov. 10,

28 2011) (granting defendant's motion to set aside default and summarily denying plaintiff's motion for

1  default judgment).

2  This disposes of ECF Nos. 23, 33.

3  **IT IS SO ORDERED.**

4  Dated: January 13, 2012



_____
LAUREL BEELER
United States Magistrate Judge